2016 JUN 20 AM 9: 36



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73652-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| T.M.K, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 20, 2016 |
| | ) | |

APPELWICK, J. — T.M.K. appeals the manifest injustice disposition imposed by the juvenile court following his guilty plea to one count of indecent liberties. He contends that the manifest injustice finding was not supported by clear and convincing evidence in the record and that the length of the disposition was clearly excessive. We affirm.

## FACTS

On November 8, 2014, T.M.K.'s stepmother fell asleep in a recliner after having been sedated for dental work earlier in the day. While she was physically incapacitated, T.M.K. fondled her breasts underneath her shirt. T.M.K. pleaded guilty to one count of indecent liberties.

Both the prosecutor and T.M.K.'s juvenile probation counselor, Kirsten Knutson, recommended a finding of manifest injustice and a disposition higher than the standard range of 15-36 weeks confinement. T.M.K.'s family testified regarding T.M.K.'s history of concerning behaviors, including setting fires, hurting animals, punching holes in the walls of their home, bringing weapons to school

and sexually propositioning a young child at church. They also testified that T.M.K. had been provided multiple different types of mental health services since he was six years old, including family therapy, individual counseling, and psychiatric medication management, but had generally not been willing to participate in them. T.M.K.'s family stated they had "no control over his behavior."

Knutson testified regarding the treatment services available to T.M.K. in a Juvenile Rehabilitation Administration (JRA) facility, including dialectical behavior therapy (DBT), group therapy, aggression replacement training, monitoring of his psychiatric medication, and a "behavioral chain analysis" specific to his offense. Knutson testified that since T.M.K. had already served seven weeks in detention, a standard range sentence could result in as little as eight weeks confinement, and T.M.K. "would barely be able to get settled into a treatment program during that period of time." Knutson also stated that a standard range sentence would provide insufficient time for "release planning," which would be critical to reducing T.M.K.'s risk of reoffense. Finally, Knutson stated that T.M.K. could "potentially" be transferred to a sex offender treatment program in a minimum security facility if he had time to make adequate progress in treatment.

The juvenile court entered findings of fact as follows:

A number of aggravating factors support a manifest injustice disposition:

a) According to the Juvenile Probation Counselor (JPC), sex offense specific treatment in the community is not available for the respondent. A standard range sentence would not allow the respondent to complete offense specific treatment available at JRA, and the manifest injustice sentence

imposed may allow him to receive treatment from a certified sex offender treatment provider.

b) As indicated in the JPC report, there is a lack of sustaining family control. The respondent's mother indicated that she is, at times, afraid of the respondent, who has " 'rages' that are uncontrollable" when she sets limits. Twice he has kicked in her locked bedroom door. He has physically assaulted her, and has a history of fire-setting, abuse of animals, and viewing pornography. Both families (mother, and father and stepmother) report similar issues.

c) The respondent has been in therapy in the community since he was six years old. These services have included individual counseling, in-home counseling, and WRAP team services. He committed this offense despite these services. The JPC reported that "he has difficulty applying adaptive skills discussed in counseling to his day-to-day life." The respondent needs a higher level of intervention than is available in the community.

. . . .

For the reasons listed above, a disposition within the standard range would not protect the community and would not provide the intensive services the respondent needs in a secure and structured environment.

The juvenile court imposed a manifest injustice disposition of 39 to 52 weeks confinement, and concluded that any one of the aggravating factors found would justify the imposition of a manifest injustice disposition. T.M.K. appeals.

DISCUSSION

A juvenile court may impose a disposition outside the standard range only if it determines that a sentence within the standard range would "effectuate a manifest injustice." A "manifest injustice" results if the standard range would "impose a serious and clear danger to society" in light of the purposes of the Juvenile Justice Act, chapter 13.40 RCW. RCW 13.40.020(19). " 'These purposes include protection of the citizenry and provision of necessary treatment,

-3-

supervision[,] and custody for juvenile offenders.' " State v. K.E., 97 Wn. App. 273, 279, 982 P.2d 1212 (1999) (quoting State v. Duncan, 90 Wn. App. 808, 812, 960 P.2d 941 (1998)).

In determining the appropriate disposition, a juvenile court may consider both statutory and nonstatutory aggravating factors. State v. T.E.C., 122 Wn. App. 9, 17, 92 P.3d 263 (2004). These may include a lack of parental control or a juvenile's need for treatment. Id. Once a juvenile court concludes that a disposition within the standard range would effectuate a manifest injustice, it is vested with broad discretion in determining the disposition. State v. J.V., 132 Wn. App. 533, 545, 132 P.3d 1116 (2006). A manifest injustice disposition is excessive "only when it cannot be justified by any reasonable view which may be taken of the record." State v. Strong, 23 Wn. App. 789, 795, 599 P.2d 20 (1979). We will uphold a manifest injustice disposition if we find that: (1) the juvenile court's reasons are supported by the record; (2) those reasons clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice; and (3) the sentence is neither clearly too lenient nor clearly too excessive. RCW 13.40.230(2).

T.M.K. contends that the factors cited by the juvenile court are not supported by the record and that they do not clearly and convincingly support a manifest injustice disposition. We disagree. Here, the juvenile court identified two primary factors supporting the manifest injustice disposition: lack of parental control and T.M.K.'s treatment needs. Both are supported by substantial evidence. The record showed that T.M.K.'s family was unable to control his

-4-

aggressive and violent behavior and expressed fear that he would hurt himself or others. The record also showed that, despite the efforts of T.M.K.'s family to involve him in counseling services, T.M.K. needed a higher level of treatment than was available to him in the community. The juvenile court's findings clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice.

We also reject T.M.K.'s claim that the disposition is clearly excessive. Knutson testified that a standard range sentence would not give T.M.K. sufficient time to enter treatment and make sufficient progress such that he would benefit from release planning or sex offense-specific treatment. Knutson's recommendation provided a tenable basis for the length of the disposition imposed by the juvenile court.

Affirmed.

_____

WE CONCUR:

_____          _____