IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34675-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRIMITIVO GARCIA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Primitivo Garcia challenges his manifest injustice sentence, arguing that it was not supported by the record and is excessive. We affirm.

FACTS

Mr. Garcia, age 17, pleaded guilty to one count of attempted second degree burglary pursuant to a plea agreement. The incident arose from an attempt to break into a church in order to spend the night in the building. Mr. Garcia suffered a leg wound from broken glass and ultimately walked into the police department, admitted his responsibility for the break-in, and obtained medical attention. He was booked into the juvenile detention facility the next day. There he admitted to having consumed several beers and having smoked four bowls of marijuana the previous day.

On probation for an earlier misdemeanor offense, Mr. Garcia was released from custody. However, he was returned to custody on May 9, 2016. At that time, he told the detention facility nurse that he had consumed eight beers the previous day.

The following month, Mr. Garcia appeared for a plea disposition hearing. He entered his guilty plea to the amended charge with knowledge that the probation department was seeking a manifest injustice sentence and commitment to the Juvenile Rehabilitation Administration (JRA). The parties asked that the court impose the standard local sanction, with the prosecutor explaining that 30 days was a sufficient punishment for a first felony for an offender with the defendant's criminal history of two prior misdemeanor offenses.

The probation department disagreed, asking for a commitment to JRA for 27 to 36 weeks. Mr. Garcia was serving his second probation at the time, and had failed to comply with both of the probationary sentences. He had racked up six probation violations, 14 warrants, spent 85 days in custody during the previous year for violating his misdemeanor sentences, had left inpatient treatment for substance abuse, would not show up for school, drank, used marijuana, and would not recognize the authority of his parents who had given up trying to control him. He would not come home at night and would not go to school.[1] In the view of the probation department, there was no reason to

---

[1] The attempted burglary involved a 3:00 a.m. break-in on a school day.

2

set him up for a third probation when he had failed to comply with the previous efforts. The only time he did what he was required to do was while he was in custody.

The trial court agreed with the probation recommendation and imposed a manifest injustice sentence of 27 to 36 weeks in the custody of JRA. The court believed the sentence length would give him sufficient time to acquire necessary skills before he turned 18. Looking at the total picture, in the court's view there was a "complete systems failure." Mr. Garcia was beyond the control of his family, which he "terrorized," failed to attend school, failed substance abuse treatment, and utterly failed probation. He needed the structure of a JRA commitment in order to have the chance to succeed.

The manifest injustice sentence was imposed and Mr. Garcia promptly appealed. Findings in support of the manifest injustice finding were entered. A panel of this court considered the case without argument under the accelerated review process.

## ANALYSIS

This appeal challenges several of the court's written factual findings, arguing that they are either not supported by the record or that they exaggerate the evidence. Mr. Garcia also challenges the decision to impose the manifest injustice term and the length of the commitment, arguing that it is excessive. After first noting the standards of review, we address those complaints in the order listed.

A "manifest injustice" is "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19). A three-part test is used to assess the propriety of a manifest injustice determination:

> (1) Are the reasons given by the trial court supported by substantial evidence; (2) do those reasons support the determination of a manifest injustice disposition beyond a reasonable doubt; and (3) is the disposition either clearly too excessive or too lenient?

*State v. Duncan*, 90 Wn. App. 808, 812, 960 P.2d 941 (1998) (citing RCW 13.40.230(2)).

The juvenile court, provided it has legitimate grounds for departing from the standard disposition, "has broad discretion to determine the length of a manifest injustice disposition." *Id.* at 815. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). This court reviews findings of fact for substantial evidence. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712, 732 P.2d 974 (1987). Substantial evidence is evidence sufficient to persuade a rational fair-minded person that the premise is true. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

*Findings*

Appellant challenges factual findings 11 through 15, arguing that the first two overstate the record and the latter three are totally unsupported. Our record is not

sufficient to adjudge these claims and underscores the necessity of first challenging findings in the trial court.

The primary problem with these challenges is the fact that the trial court had before it many documents that we do not have. In addition to the two court and probation files, the record reflects that the court also had Mr. Garcia's booking interview statement, e-mails from his drug/alcohol counselor Ms. Dupuis, a mental health diagnosis from Mr. Miller,[2] and a summary report from Ms. Dupuis. Report of Proceedings at 14-16. The specific dates, activities, and details of findings 11 through 15 are likely included in those files. RCW 13.40.150(1) allows the court to rely on written reports that might not otherwise be admissible in evidence at trial.[3] Mr. Garcia does not allege, nor does the record suggest, that he was not afforded the opportunity to examine the reports and object to their use in understanding his need and capacity for rehabilitation. *State v. Escoto*, 108 Wn.2d 1, 10, 735 P.2d 1310 (1987) (Durham, J., concurring). The records and files afforded the trial court are part of the record of the disposition. However, they are not part of our record.

Similarly, the court scheduled a presentment hearing, but no record of that proceeding has been provided to this court. In addition, the trial court's findings do not

---

[2] The record does not include the job titles or first names of Ms. Dupuis and Mr. Miller.

[3] *See generally*, *State v. S.S.*, 67 Wn. App. 800, 805-811, 840 P.2d 891 (1992).

reflect that any objections were made by counsel for Mr. Garcia. Similarly, neither did defense counsel object to the factual assertions made by the probation officer to the court at the disposition hearing. If there were facts alleged that were not supported by the evidence in the case, it was incumbent on the defense to call that matter to the trial court's attention. That did not happen here.

Accordingly, we will not consider a challenge to the sufficiency of the evidence to support findings that were not raised in the trial court, where the record could be clarified and findings amended if needed, and is based on records that are not part of the appellate record. In these circumstances, the challenge is not preserved for our review and we will consider it waived.

The challenge to the five noted findings is without merit.

*Declaration of Manifest Injustice*

Mr. Garcia next argues that the findings do not support a manifest injustice determination because they do not establish a clear danger to society. We disagree.

The trial court concluded that the previous probation efforts had been a failure and that his multiple violations of probation, along with his refusal to follow rules at school or at home, made a standard disposition too lenient. These findings are sufficient to support a determination that the standard disposition would present a clear and serious danger to society.

The seriousness of the offense is not the determining factor in assessing danger to society. *State v. Taylor*, 42 Wn. App. 74, 76, 709 P.2d 1207 (1985). Instead, the focus is on whether a youthful offender's continued criminal behavior and disdain for rehabilitative services results in a determination that more local sanctions would be futile in aiding the offender and protecting society. *Id.* at 77. Another case with a similar outcome is *State v. N.E.*, 70 Wn. App. 602, 854 P.2d 672 (1993). There the youth was 16, with a history of prostitution and failed efforts at local drug and alcohol treatment. *Id.* at 603-604. On appeal of a manifest injustice disposition, she argued that she was only a danger to herself, not society. *Id.* at 605. Without deciding whether self-danger alone was a sufficient basis for a manifest injustice finding, the court concluded that the youth's need for structured services and prior failure in community-based services, along with lack of parental control and a high risk of reoffend, justified the manifest injustice determination. *Id.* at 606-607.

Similarly here, the court based its findings and reasoning on multiple considerations, including statutory aggravating factors. *See* RCW 13.40.150(3)(i). The injury Mr. Garcia received during the attempted burglary, combined with the reported "terrorizing" of his family led the court to believe there were personal and family safety issues in this case. The aggravating factors included a reasonable certainty that probation would not be successful for Mr. Garcia due to past performance, his use of illegal drugs and alcohol, his resistance to taking his prescribed medication, and his noncompliance

7

with school, parents, rules, and curfew. Cumulatively, these aggravating factors supported the court's manifest injustice disposition because the standard local sanction would be too lenient for Mr. Garcia to receive the services and structured confinement he needed for rehabilitation.

Mr. Garcia's need for services delivered in a structured setting exceeded what could be provided locally under the standard disposition. The juvenile court properly concluded that a manifest injustice existed.

*Length of Disposition*

Mr. Garcia also argues that the length of the commitment to JRA—27 to 36 weeks—was excessive. In light of what needed to be accomplished in the last few months of Mr. Garcia's minority, a sentence range of six to nine months was not abuse of the trial court's discretion.

As noted previously, if there are legitimate grounds to declare a manifest injustice, the court has broad discretion to determine the necessary length. *Duncan*, 90 Wn. App. at 815. Here, the court noted that it had a limited time to provide necessary services, including treatment as well as education, before Mr. Garcia turned 18 in November.

This case is similar to *Taylor*. There, the juvenile also faced a standard range disposition of 30 days detention, but received a sentence of 65 weeks. 42 Wn. App. at 75. The court stated the juvenile

8

has a recent criminal history . . . has a record of delinquency and incorrigibility… he was on parole when he committed the instant offenses [second degree criminal trespass and vehicle prowling] and has violated conditions of parole and rules set by various authority figures, including parents, schools, courts. . . . he has received leniency and other treatment and has not been receptive; he has not been made accountable for his actions; he has no regard for the property or safety of others; he has a drug and alcohol problem; he needs the structure, intensive treatment, training and supervision that only an institution can provide.

*Id.* at 77. The facts were sufficient, beyond a reasonable doubt, to support the manifest injustice sentence of 65 weeks and it was not "clearly excessive." *Id.* at 77-78.

Mr. Garcia's case has nearly identical aggravating factors to *Taylor*, but with a much shorter sentence range. He had a recent criminal history, had violated conditions of parole and rules set by parents, schools, courts, and had not been receptive to leniency and treatment. As in *Taylor*, the court was entitled to conclude that further efforts on the local level would probably not succeed. 42 Wn. App. at 77. The trial court concluded here that only a manifest injustice sentence would provide for Mr. Garcia the structured confinement necessary to give him the time and resources for the best chance at rehabilitation before he turned 18 later that year. Therefore, the manifest injustice sentence was not clearly excessive; it was not "exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken." *State v. Strong*, 23 Wn. App. 789, 794, 599 P.2d 20 (1979) (citations omitted); RCW 13.40.160, .230(2)(b).

9

The modest sentence range was not clearly excessive. Instead, it was narrowly tailored to recognize his needs as well as the impending coming of Mr. Garcia's legal adulthood.

The judgment of the juvenile court is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.